IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHELLE E. NORTON | * | |
| | * | |
| v. | * | Civil No. JFM-05-1478 |
| | * | |
| THE SPERLING LAW OFFICE, P.C., et al. | * | |
| | * | |

*****

## MEMORANDUM

Plaintiff Michelle Norton ("Norton") has brought this action against defendant The Sperling Law Office, P.C. ("Sperling") for legal malpractice. Now pending before me is Sperling's motion for summary judgment on limitations grounds. For the reasons that follow, the motion will be denied.

## I.

Norton lives in Littlestown, Pennsylvania, but works in Maryland at a Home Depot retail outlet. (Compl. ¶ 9; Police Report at 2, Exhibit 2A to Sperling Br.) On July 16, 2002, while commuting home from work and after having just crossed the border into Pennsylvania, Norton's vehicle was struck from behind when a vehicle immediately behind it was also hit from behind. (Compl. ¶ 9.) Kyle Evans ("Evans") was driving the car that began the contagion. (Sperling Br. at 1.) Two days later, Norton retained Sperling, a Baltimore County law firm, on a contingency fee basis to represent her in a suit against Evans. (Compl. ¶ 11.)

Pennsylvania has a general two-year statute of limitations for tort suits, 42 PA. CONS. STAT. § 5524,[1] but Sperling did not file a complaint in a Pennsylvania court before July 16, 2004. (Norton Opp. Br. at 2.) Realizing its apparent error, the firm produced an internal memorandum on February 17, 2005 in which it determined that the only way to explain the procedural default to a court was to argue that Norton mistakenly believed the accident to have occurred in Maryland and therefore did not pursue her claim in Pennsylvania. (Internal Memorandum, Exhibit A to Norton Opp. Br.) Whether this equitable (and apparently disingenuous) plea would have succeeded is not known, for Sperling chose not to file a complaint. (Norton Opp. Br. at 2-3.)

Concerned that her attorneys had made no progress with her case, Norton consulted another law firm, Lebowitz & Mzhen ("Lebowitz"), on May 5, 2005. (Compl. ¶ 12; Sperling Br. at 1.) She brought with her the accident report filed by the Pennsylvania police that showed the collision had indeed occurred in Pennsylvania and that Evans was a Pennsylvania resident. (Sperling Reply Br. at 6.) Lebowitz advised her of the apparently lapsed Pennsylvania statute of limitations, to which Norton responded by retaining Lebowitz's services and severing her relationship with Sperling. (Compl. ¶ 12; Sperling Br. at 1-2.) Less than a month later, Norton, through Lebowitz, brought this

---

[1] There is an exception to this general statute of limitations. Pursuant to the Motor Vehicle Financial Responsibility Law, 75 PA. CONS. STAT. § 1701 *et seq.*, an insured can choose a "limited tort option" for automobile insurance. *Id.* § 1705. If this option is chosen, the insured will pay a lower premium for insurance in exchange for agreeing not to seek compensation for pain and suffering and other non-economic damages arising from bodily injury that is not "serious." A "serious injury" is defined as "[a] personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." *Id.* § 1702. Pennsylvania courts have held that the general statute of limitations is tolled for a limited tort plaintiff until the time she knows or reasonably should know that she sustained a serious injury. *Walls v. Scheckler*, 700 A.2d 532, 533 (Pa. Super. Ct. 1997). Sperling alleges, and Norton does not dispute, that at the time of the accident Norton was insured under the limited tort option. (Sperling Br. at 1 n.1.)

malpractice action pursuant to this court's diversity jurisdiction. 28 U.S.C. § 1332(a). She is seeking $750,000 in damages.

Sperling has now vigorously investigated whether Norton's cause of action actually was time-barred. In doing so, its attorney contacted Evans in July 2005 and learned that for the past twenty years she has worked full-time in Owings Mills, Maryland as an office assistant for a dental practice. (First Affidavit of Evans at 1-2, Exhibit A to Sperling Br.; Norton Opp. Br. at 15.) She alternates between working four days a week and five days a week, and, like Norton, commutes to work by driving from her home in Littlestown, Pennsylvania. (First Affidavit of Evans at 1-2.) Indeed, Evans was on her way home from work when the accident occurred. (*Id*. at 1.) That is the extent of her connection with Maryland, however. She owns no property in Maryland and she pays all of her taxes and is registered to vote in Pennsylvania. (Second Affidavit of Evans at 1-2, Exhibit C to Norton Opp. Br.)

In moving for summary judgment, Sperling argues that Evans was subject to general personal jurisdiction in Maryland. *See* MD. CODE ANN., CTS. & JUD. PROC. § 6-103(b)(4). Maryland has a three-year statute of limitations for tort suits. *Id*. § 5-101; *see Doughty v. Prettyman*, 219 Md. 83, 88 (1959) (stating that issue of whether the statute of limitations bars a plaintiff's tort action in a Maryland court is governed by Maryland law and not the law of another state where the tort occurred). Because the limitations period in Maryland therefore ran until July 26, 2005, Lebowitz had approximately ten weeks from the date on which it was retained to file a complaint in a Maryland court. Thus, since legal malpractice sounds in tort, *Supik v. Bodie, Nagle, Dolina, Smith & Hobbs, P.A.*, 834 A.2d 170, 181 (Md. Ct. Spec. App. 2003) (citing *Flaherty v. Weinberg*, 492 A.2d 618, 627 (Md. 1985)), Sperling contends that it is entitled to summary judgment because the

3

causal link between its actions and Norton's alleged harm was broken by Lebowitz's intervening failure to avail itself of a Maryland forum. *Steketee v. Lintz, Williams & Rotherberg*, 694 P.2d 1153, 1159 (Cal. 1985).[2]

I disagree. Whether Evans' full-time employment in Maryland gives the state general personal jurisdiction over her is an issue I need not resolve. For even assuming that Sperling is correct on that point, I find that Lebowitz's actions were not improper and thus did not amount to an intervening cause.

## II.

"A legal malpractice action . . . is similar to any other negligence claim which requires that a plaintiff prove duty, breach, causation, and damage. The absence of any one of those elements will defeat a cause of action in tort." *Supik*, 834 A.2d at 181 (citing *Flaherty*, 492 A.2d at 627). The specific elements a client must prove are: "(1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) loss to the client proximately caused by that neglect of duty." *Thomas v. Bethea*, 718 A.2d 1187, 1195 (Md. Ct. App. 1998). For the purposes of this motion, only the third element is at issue.

Generally speaking, "proximate cause" means that the defendant's negligent act was the "direct and continuing cause" of the plaintiff's injury. *Collins v. Luper*, 277 A.2d 445, 449-50 (Md.

---

[2] Given that Norton is a limited tort plaintiff under Pennsylvania law, see *supra* note 1, there is also a question as to whether the Pennsylvania statute of limitations had lapsed when Norton retained Lebowitz. However, because the evidentiary record has not been developed as to whether Norton suffered a "serious injury" and, if so, whether she knew or reasonably should have known she had done so, neither side has moved for summary judgment on this issue.

Ct. Spec. App. 1971). Put another way, the injury "must be the natural and probable consequence of the negligent act, unbroken by any intervening agency, and where the negligence of any one person is merely passive, and potential, while the negligence of another is the moving and effective cause of the injury, the latter is the proximate cause and fixes the liability." *Id*.

Translating this concept into the context of legal malpractice, courts have consistently held that "[a]n attorney cannot be held liable for failing to file an action prior to the expiration of the statute of limitations if he ceased to represent the client and was replaced by other counsel before the statute ran on the client's actions." *Steketee*, 694 P.2d at 1159 (citing *Shelly v. Hansen*, 53 Cal. Rptr. 20, 22 (Cal. Ct. App. 1966), disapproved on other grounds, *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 491 P.2d 421 (Cal. 1971)); *see also e.g.*, *Faulkner v. Ensz*, 109 F.3d 474, 476-77 (8th Cir. 1997); *Riordan v. Jones*, 793 F. Supp. 650, 651 (D. Md. 1992); *Boyle v. Odette*, 425 N.W.2d 472, 476 (Mich. Ct. App. 1988); *Frazier v. Effman*, 501 So. 2d 114, 115 (Fla. Dist. Ct. App. 1987); *Harvey v. Mackay*, 440 N.E.2d 1022, 1026 (Ill. App. Ct. 1982). The *Steketee* defense is relevant only in situations where, like here, the later-retained attorney also failed to file suit on the client's behalf before the statute of limitations lapsed. This subsequent failure can serve as an intervening cause that breaks the chain of causation arising from the prior attorney's negligence, absolving her of liability. *Faulkner*, 109 F.3d at 476-77.

I say "can serve," rather than "serves," because courts have recognized a limitation on the *Steketee* defense. To prevail, the defendant must show that there was a sufficiently long time gap between the severing of the attorney-client relationship and the lapse of the statute of limitations. *E.g.*, *Riordan v. Jones*, 793 F. Supp. 650, 651 (D. Md. 1992) ("[W]here, as here, there is sufficient time to engage new counsel and file suit, there is no malpractice."); *Frazier*, 501 So. 2d at 116 ("This

is not to say, of course, that, if in a given case insufficient time were to remain for the successor lawyer to rectify the oversight before the statute ran . . . a viable cause of action might not exist."). In fact, this is not actually a "limitation" at all, but rather a necessary corollary of the proximate-cause foundation of the defense, which requires that the conduct of the later-retained attorney *significantly* interrupt the chain of causation before it can be considered an intervening cause of the harm. *See Faulkner*, 109 F.3d at 476-77. Such an interruption occurs only when the later-retained attorney had enough time to right the wrong committed by the client's previous attorney. Courts have not set a minimum baseline for what constitutes "sufficient time," although one court has deemed as little as thirty days sufficient. *Sherotov v. Capoccia*, 555 N.Y.S.2d 918, 919 (N.Y. App. Div. 1990); *see also Faulkner*, 109 F.3d at 475-77 (finding two months sufficient); *Boyle*, 425 N.W.2d at 476 (finding four months sufficient).

### III.

Sperling contends that it cannot be held liable for its own prior inaction because Lebowitz had ten weeks in which to file suit in Maryland before the three-year statute of limitations expired. At first blush this argument might appear correct. As a general matter, the cases cited above support the proposition that ten weeks should be sufficient time for a newly retained attorney to familiarize herself with a case and file a complaint if warranted. However, this case is distinguishable in one critical aspect: in all of the prior cases addressing the *Steketee* defense, the availability of a proper forum in which to file suit was clear from the circumstances of the case. Therefore, the later-retained attorney's failure to take advantage of it was a plain error and, therefore, could properly be considered an intervening cause. Here, however, Lebowitz could not reasonably have been expected

to ascertain in ten weeks that Maryland was a proper forum. I therefore find that Lebowitz's failure to file suit in Maryland was not an intervening cause that broke the causal chain between Sperling's conduct and Norton's alleged harm.

In Maryland, an attorney who proceeds in a civil action in bad faith or without substantial justification must pay the attorneys fees for the opposing party. MD. RULE 1-341. "For there to be substantial justification, the litigant's position must be fairly debatable and within the realm of legitimate advocacy." *Barnes v. Rosenthal Toyota, Inc.*, 126 Md. App. 97, 105-06 (1999) (citation omitted); *see also* PA RULES OF PROF'L CONDUCT R. 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous . . . ."). Thus, in order for Lebowitz to have filed suit in Maryland without running afoul of Rule 1-341, and in accordance with its professional obligations, it needed enough facts to make a legitimate claim that Evans had "continuous and systematic" contacts with the state to justify the exercise of general personal jurisdiction over her. *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

Clearly the firm could not file a complaint based solely on the information Norton provided it in May 2005. That information consisted only of the accident report and the name of Evans' insurer. Sperling contends otherwise, arguing that "[t]he fact the accident occurred between northbound vehicles just above the Pennsylvania line in the early evening of a working day" would have sufficed. (Sperling Reply Br. at 5; *id*. at 6.) That argument borders on frivolous. Nothing about the time or location of the accident remotely suggests the continuous and systematic contacts with Maryland necessary to hale a Pennsylvania resident into a Maryland court.

7

Sperling is on somewhat firmer ground when it argues that the circumstances surrounding the accident "would naturally lead one to question what contacts Evans had with Maryland and invite further investigation," such that Lebowitz should have discovered that Evans worked fulltime in the state. (*Id.*) For two reasons, however, I find this contention unpersuasive as well. First, Sperling itself never thought to investigate Evans' ties to Maryland while it represented Norton, even after it recognized in February 2005 that the Pennsylvania statute of limitations had probably expired. Although the focus is not on what Sperling did but rather on what a reasonable attorney would do, the fact that Sperling did not follow this supposed "lead" when under the cloud of a possible malpractice action is informative.

Second, it is not reasonable to expect an attorney outside the bounds of a court-supervised discovery process to unearth the complete background of a putative opposing party. Lebowitz knew both the location of the accident and Evans' state of residence. There was no reason to go digging for more information. Indeed, the only method Sperling suggests that Lebowitz could have employed to do so was to call and speak with Evans herself. (*Id.* at 5 n.5.) However, under the Pennsylvania Rules of Professional Conduct an attorney who contacts an unrepresented person must disclose her relationship with her client and explain that the client has interests contrary to that person. PA RULES OF PROF'L CONDUCT R. 4.3 & cmt 1. It is highly doubtful that Evans would have discussed *anything* with a Lebowitz attorney had he made such a call and properly explained that he had been retained to sue her for hundreds of thousands of dollars.[3]

---

[3] Sperling points out that Evans did speak with its attorney in July 2005. That fact, however, is beside the point because Sperling was no longer representing Norton. (Sperling Reply Br. at 5 n.5.)

For these reasons, Sperling's motion for summary judgment is denied. A separate order follows.

Date:  February 24, 2006                    /s/_____
                                            J. Frederick Motz
                                            United States District Judge